Our next case this morning is Link Labs v. Samsung, 2023-1934. Mr. Schreiner, we're ready when you are. Thank you, Your Honor. May it please the Court, my name is Steve Schreiner. I'm appearing here on behalf of patent owner Link Labs in connection with the PTAB's decision on the 697 patent. I'm joined here by my colleague Steve McBride and Jim Carmichael. There are four arguments that are presented in the briefs and I'd like to focus on two of them today, if the Court permits. The first argument is that the proposed combination regarding the modified OBA PC does not meet the requirement of an LED lighting device pursuant to limitation 1H, which sets forth that all the recited elements must be contained within a package. The second argument is that the capacitor-coupled battery ground limitation of 1F is not met because there is no predicate showing that the OBA PC has a noise problem in its battery circuit to provide a reason to modify it pursuant to HERA. I'll start with the first argument related to the term package. The Board's analysis of limitation 1H basically consists of two sentences. This is in appendix 26 in the final written decision. The Board states, patent owner asserts in the district court litigation that a cell phone, tablet and watch constitute a quote-unquote package as that term is used in the 697 patent. Thus we find that the laptop computer OBA constitutes a package. That's essentially the entirety of the Board's analysis on limitation 1H. Did you ask the Board to construe the term package? Yes, we did. The patent owner response we cited to the definition of package in the patent, which is at column 5, lines 46 through 50 of the 697 patent, that's appendix 113. It states, it should be noted that package is defined herein as an integrated unit to be used as a discrete component in either of the manufacture, assembly, installation or modification of an LED lighting device or system. So distilled down to its relevant essence here, it's saying that a package is a discrete component of an LED lighting system. So what did the Board do below regarding limitation 1H and package and LED lighting device? Instead of analyzing the prior art OBA PC against the claim language, the Board pointed to infringement contentions and accused devices in those infringement contentions. The Board and Samsung provide no authority for the proposition that you can establish obviousness by pointing to accused devices in litigation. So we submit that that was an error of law on its face by the Board. Secondly, the Board erred by not even comparing the prior art modified OBA PC to these accused products. The Board never compared the modified OBA PC to the cell phone, tablet and watch that were accused devices from preliminary infringement contentions. So this is another reason for reversal. Additionally, the Board erred by improperly expanding the express definition of package to include some LED devices mentioned in the background section of the invention in the 697 patent. That's referring to general lighting, specialty lighting, signs and decoration. We submit that was an erroneous claim construction. The term package is explicitly and clearly defined in column 5. There's no reference to the passage from the background of the invention. But even there, in applying its erroneous claim construction, the Board erred in failing to determine whether the prior art modified OBA PC fell into any of these categories of LED devices, general lighting, specialty lighting, etc. Now what did Samsung do below? Samsung never provided any evidence nor any argument in any of its papers that the modified OBA PC was a component of an LED lighting device. Instead, Samsung argued that the OBA PC has a housing and therefore a housing meets the requirement of a package. Now Link brought up this issue about the construction, the express definition of package in its patent owner response. So Samsung knew about it and they had an opportunity to respond. They submitted I think a 30 page expert reply declaration, did not address the issue. Now the construction of the term package, it was not only not a surprise to Samsung because Link, the patent owner, brought it up in its patent owner response, but Samsung itself advocated this claim construction for package in its Markman papers, submitted two months before it presented this petition. So if I could refer the court to Appendix 8178 through 8179, this is Samsung's Markman brief from July 2021, presented two months before the petition. In that Markman brief, Samsung said that the definition, the construction of package is quote, an integrated unit meant to be used as a discrete component in the manufacture, assembly, installation, or modification of an LED lighting device or system. So under these circumstances, there was no excuse for Samsung not to reduce any evidence that its proposed modified OVA PC met the LED lighting device requirement of limitation of 1H. Now Samsung makes several new arguments on appeal. They're all new arguments and they should all be deemed waived, but I'll go ahead and touch on them. Its first new argument is the OVA PC has a couple indicator lamps, BL and PL, battery lamp and power lamp, and Samsung argues that, well, they transformed the OVA PC into an LED lighting device. But a procedure would understand that an LED lighting device is a device that provides illumination of an area or space so that a user can see, and that certainly is not satisfied by these little indicator lights, which just merely communicate information. Samsung makes a second new argument on appeal, which is that the Gillespie reference, which has an LED touch screen, which would be inserted in place of OVA's mouse touch pad, that that transforms OVA's PC into an LED lighting device. Again, its waived on appeal, but it also fails on the merits because this LED touch screen of Gillespie, what does it do? It displays information to the user. Its not functioning as an LED lighting device to illuminate a space for a user to be able to see. Samsung makes a third new argument on appeal, which is that the prior OVA PC is, quote, that's the general lighting, specialty lighting, signs, and decorations such as a Christmas tree. I think it's fair to say that a PC would not consider the modified OVA personal computer... You're talking about a person of skill in the art, speaking English. Yes, your honor. So a person of skill in the art would not consider OVA's personal computer to fall within any of those categories. A person of skill in the art would not consider, for example, OVA's PC to be specialty lighting, or to be a sign, or certainly to be a decoration such as a Christmas tree. So at the end of the day, Samsung adduced no evidence that the proposed prior art combination with this modified OVA PC meets the package limitation which requires it to be contained within an LED lighting device. And we submit that the decision on the claims should be reversed and should be done so without remand because there's just no evidence in the record below to support a finding that these claims are unpatentable. The second issue relates to limitation 1F, which recites that there is a capacitive coupled battery ground connected to at least one of the previously recited components. And the PCTA would not have a reason to modify OVA's PC because, number one, OVA's PC does not have this standing wave antenna noise problem that's identified in the HERA reference. And secondly, OVA's PC, its battery circuit, does not have any noise issue to call for the solution provided by HERA. This is a substantial evidence review and their expert testified that persons skilled in the art would have understood. And I think this evidence was unrebutted, this testimony. Persons skilled in the art would have understood that OVA's laptop would experience issues from noise that permeates from such a power source. Is there anything on the other side of the equation? Did your expert rebut this in any way, shape, or form? I'd respectfully submit that the petitioner's expert did not provide evidence that OVA's battery circuit had noise. What he said was, he said, and this is in, let me give you the citation, this is appendix 8143-44. He says, moreover, the AC power connected to OVA PC would have been known as a source of noise. A person of ordinary skill in the art would have understood that such noise would have been mitigated through filtering. So what he says is that AC power is a source of noise. He does not go the further step. What was the page you gave me? Sure. 8143-8144. It's the petitioner's expert's reply declaration. So he simply says that AC noise is a known source, AC power is a known source of noise. He doesn't go the further step of saying that that would create noise within OVA's battery circuit. Because what we're talking about is... Isn't it a reasonable inference for the board to draw from that unrebutted testimony that you just read to us? I don't think so. Because the AC power could theoretically create noise in any number of components in OVA, as a matter of theory. But what we're talking about here is modifying OVA's battery circuit to add a capacitor. So there needs to be a showing that there is noise in OVA's battery circuit. In other words, it delivers noisy DC power in order to provide the justification for the combination. Samsung's expert does not provide that evidence. He's very careful in his testimony. He says that AC power is a known source of noise, but he doesn't go the further step of saying that that noise would infect OVA's battery circuit. Samsung's expert has to be credited for not just simply going the extra step and providing evidence for an opinion that he obviously was not willing to make. As to the point that could the board have made an inference, the board can make obviously lots of inferences based on the testimony that was provided by Samsung's expert. But the board didn't articulate that inference. The board is required to provide articulated reasoning tied to identified evidence supporting its findings. Counsel, you're into your bottle time. You can continue or save it as you wish. Sure. I'll just add, the only thing the board found was that, quote, AC power is a source of noise. This is at appendix 21 in the final written decision at page 19. There's no finding that OVA's battery circuit was delivering noisy DC power. Thank you for your honor. Let's go to Ronald Berger. May it please the court, substantial evidence supports the board's conclusion that OVA has a package as claimed. Now, Link hinges its argument on the definition and the specification that includes an LED lighting system. But the board was applying that definitional statement when it looked to the specification to understand what it meant and said that the field of LED lighting systems is broad and includes things like general lighting, specialty lighting, signs, and decoration. And thus, there was no reason for the board to conclude that OVA, either alone or as modified by Gillespie, which has an LED that produces light, is not a package that includes an LED lighting system. And in fact, the board, at appendix 22 and 23, they went through the issue of whether OVA, alone or as modified by Gillespie, had an LED, because there is an LED limitation, and they concluded that it does over the arguments of Link Labs. They said that OVA itself has the LED lamps that produce light and signal various indications on the device, and in the alternative, that it would have been obvious to modify OVA to have either an OLED or LED backlight that also would have produced light. LED disputed those issues below, but it does not dispute those issues on appeal. And what I think is also particularly illuminating here is to look at how Link raised its argument about package below. It had a single sentence at appendix 399 where it said, Petitioner fails to show that the prior art combination of ground one is an LED lighting device or system. It didn't explain what it meant by that, but it made that argument within the section of its response where it disputed that OVA alone or in combination with Gillespie has an LED at all. They argued OVA, or OVA as modified by Gillespie, doesn't have an LED, it doesn't meet the LED limitation, and then they tacked on the sentence saying it doesn't meet the package because it doesn't have an LED lighting system. That's how we understood their argument, that's how the board understood their argument, and so once the board had dealt with that argument and concluded that, in fact, the LED limitation was met, there is an LED, it produces light, then the board concluded that a package, which has an LED lighting system, is also met because it produces light. And there wasn't some unique way to interpret the words in the specification with that definition to give it some peculiar meaning. Briefly on the infringement contentions, I'll just note that the only way the board used those contentions here was to confirm its understanding of the specification, where it saw that Link Labs was applying the meaning of package to, in district court, and its infringement contentions in a manner that was consistent with how it was interpreting the package, and it didn't use it in any larger extent. Turning to the capacitively coupled battery ground limitation, the board's determination there is also supported by substantial evidence. In Appendix 18, in particular, you'll see that the board made three key findings based on Dr. Baker's testimony. One, that Oba's laptop itself has a battery ground. Two, that a person of skill in the art would have understood from Hara that there would have been a desire to apply capacitive coupling between a battery ground and the circuit components to filter for noise. And three, that a person of skill would have been motivated to apply capacitive coupling between Oba's battery ground and Oba's circuit components in order to ensure a steady supply of power. Now Link says that this is a solution in search of a problem, but that is not true, and Dr. Baker provided detailed testimony over many pages to explain why, in fact, there would have been a problem of noise in Oba. For example, in Appendix 8145 and 8150, he explained how, contrary to Link's arguments, there would have actually been space between the circuit components and the battery in Oba that would have resulted in noise. It might have been at a different frequency than in Hara, but there still would have been noise, as Dr. Baker explained. He also explained at Appendix 8146 to 8147 how Hara would have been applicable to Oba, because Hara, while it certainly has disclosures where there are lengthy power lines, it also has disclosures of portable devices, much like Oba's. It says that there's a notebook PC500, there's an embodiment where it's a portable type. And even in that portable type example, it still makes use of a capacitive coupling between battery ground and the circuit components to deal with noise. In addition, Dr. Baker explained how AC power was an additional source of noise. He explained how Oba has two alternative sources of power, a battery and AC power, and how AC power can be used to charge the battery, so it's not one or the other. They can both be engaged at the same time, and that was undisputed. Link didn't dispute below that AC power would have been a source of noise in any manner whatsoever. There's certainly enough evidence below from Dr. Baker's testimony, Oba, Hara, and the contemporaneous evidence that Dr. Baker cited for the board to have concluded that a person of ordinary skill nor would have seen the advantages of applying capacitive coupling between a battery ground and the circuit components of Oba's device to support a finding that there was substantial evidence for the board's conclusion. Do you have any specific response to the sentences at 81, 43, and 44 that counsel read to us? I take it part of your response is there's more to what the expert said. How about those two sentences? Are they themselves substantial evidence to support? Yes, Your Honor, they are substantial evidence because for one, the board was certainly entitled to conclude that what Dr. Baker was talking about there was the AC power in Oba. What else would he have been talking about? He was responding to the arguments that Link was making. He was observing how Oba has an AC power feature and AC power is a source of noise. In the next sentence, he talks about how capacitive coupling between the battery ground and the circuit components would have been a way to deal with that noise. The fact that Link doesn't dispute this at all below means that the board really had no reason not to credit that testimony. This isn't a situation like TQ Delta where the expert was really concluding on the ultimate question of law about is this obvious or not. He was providing testimony on a particular factual issue. He's an expert. He has experience in the field. He also cited contemporaneous evidence at the time. Link lab simply didn't dispute this below. That in itself is substantial evidence for the board's conclusion. As Your Honor said, here there is more. The board didn't limit itself to only the AC power issue. It cited all of Dr. Baker's testimony and found all of it to be compelling. In Dr. Baker's testimony, he also talked about how Oba itself, as I said before, the distance between the circuit components and the battery would have been a source of noise. He also disputed specifically Link lab's argument about the standing waves where the board certainly did not, contrary to Link's representations on appeal, the board did not agree with them about the standing wave. It simply said, even if Link was right about the standing wave issue, they still lose. Dr. Baker disputed the standing wave issue. He explained how in Oba, even though the standing waves might be at a different frequency because you'll have different lengths of the wires, there's still going to be a standing wave because there's still going to be noise coming from components that radiates at the batteries. A person of ordinary skill certainly would have had a motivation or seen advantages to providing capacitive coupling to deal with that noise. If there are no further questions, I'll return the rest of my time to the court. Yes. You will not have further use of that time. Mr. Schreiner. Thank you, Your Honor. First, the board essentially did agree with Link that Oba's PC did not have the standing wave antenna noise problem. If I could refer the court to Appendix 20, the final written decision at Natural Page 18, the board stated, the capacitive coupling to battery ground, however, need not be used in Oba to solve the same problem identified in HERA. That was the board essentially saying there's no evidence that Oba's PC had the standing wave antenna noise problem that was addressed by HERA. Secondly, Link's expert declaration of Mr. Crudell disputed throughout that Oba had a noise problem. So I really disagree with Samsung Counsel on that. And third, Samsung Counsel refers to 8145, 8150, the appendix pages where their expert on reply argued that Oba's PC would have the standing wave antenna noise problem. But that was first presented on reply to the board. And Link objected to that. And the board properly did not address that or credit that because it was presented for the first time on reply. As to the three factual findings that were made by the board, none of them established the factual predicate that is required here. The board found that Oba's PC had a battery ground. That was its first factual finding. And the second factual finding was that HERA's capacitor could be used to filter noise. And then the third factual finding was that the application of HERA's capacitor to Oba would provide smooth delivered power, which is basically saying it would provide the solution. But none of those factual findings of the board established that Oba's battery circuit had a problem with delivering noisy DC power. That is the factual predicate that is required to make the combination of Oba's capacitor into HERA's capacitor with the battery ground of Oba. And that was never established by the board. And we submit it is more than a substantial evidence issue. It is a fact that the board didn't make the factual predicate at all, which we believe is an error of law. Turning to the issue of limitation 1H with regard to package and an LED lighting system, I believe counsel made some reference to the board making a finding regarding the battery lamp and the power lamp of Oba's PC. I'm looking through the board's findings on this term. You better look through fast because that red light means your time is up. You may finish your thought. Okay. The board made no factual findings to support limitation 1H. Thank you very much. I appreciate your time. Thank you to both counsel in case you submit it.